**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IUE-CWA; IUE-CWA GE and Aerospace Conference Board; United Electrical, Radio & Machine Workers of America; International Brotherhood of Electrical Workers; International Association of Machinists and Aerospace Workers; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; International Federation of Professional and Technical Engineers; International Brotherhood of Teamsters; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; William Spires; Randal Payton; Eric Swanson; Richard Hanson; Floyd Marquette; Thomas Smith; Susan Corfios; Sharryn Jones; Eleanor Antonell; Ronald Klazon, Sr.; Ronald Flowers; Robert Buffenbarger; Carroll Smith; Theodore Shimkowiak; Rich Friedeck; Thomas Stevens, Jr.; Zora Margosian; Floyd Miklic; Garry Ward; Peter Bargovic; William Cervera; Jeffrey Marshall; Lloyd Terrell; David Esperti; Donald Rosbozom; Raymond Reksc; James DeWolf; and Sandra Sue Lee, individually and as representatives of a class of similarly situated persons, | **COMPLAINT** |

Plaintiffs,

- against -

General Electric Company,

Defendant.

## INTRODUCTION

1.     This is an action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(2) and (a)(3); and the Declaratory Judgment Act, 28 USC §2201(i), to declare unlawful and enjoin the decision of General Electric Company ("GE") to cancel GE's post-65 Medicare benefit plans for tens of thousands of its union-represented retirees as of January 1, 2016, (ii) to recover damages for any retirees who suffer losses due to

GE's cancellation of these post-65 benefit plans, and (iii) to restore those post 65- Medicare benefit plans.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 and 1331, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), and 1132(f).

3.      This Court also has jurisdiction under § 301 of the LMRA, 29 U.S.C. § 185, in that certain of Defendant's actions violated collective bargaining agreements between an employer and the Plaintiff labor organizations.

4.      Venue lies in this District under 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 185(a), as a substantial number of the threatened contract violations and ERISA violations will occur in this district, Plaintiffs Floyd Marquette, Thomas Smith, Susan Corfios, Sharryn Jones, Eleanor Antonell and Ronald Klazon, Sr. reside in this District and GE is present in this District.

## THE PARTIES

5.      IUE-CWA, affiliated with the Communication Workers of America, is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4).  IUE-CWA is located at 2701 Dryden Avenue, Dayton, Ohio 45439.

6.      The IUE-CWA GE and Aerospace Conference Board ("IUE GE Conference Board") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). The IUE GE Conference Board is affiliated with the IUE-CWA and consists of local unions of the IUE-CWA that represent workers employed by GE.  The IUE GE Conference Board is located at 20 Prospect Place,

Ballston Spa, New York 12020.  The IUE GE Conference Board conducts collective bargaining with GE on behalf of the IUE-CWA.

7.      The United Electrical, Radio and Machine Workers of America ("UE") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). UE is located at One Gateway Center, Suite 1400, Pittsburgh, PA 15222.

8.      The International Brotherhood of Electrical Workers ("IBEW") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). IBEW is located at 900 Seventh Street, N.W., Washington, DC 20001.

9.      The International Association of Machinists and Aerospace Workers ("IAM") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). IAM is located at 9000 Machinists Place, Upper Marlboro, MD 20772-2687.

10.     The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America United Automobile Workers ("UAW") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). UAW is located at 8000 East Jefferson Street, Detroit, Michigan 48214.

11.     The International Federation of Professional and Technical Engineers ("IFPTE") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). IFPTE is located at 501 3rd Street NW, Suite 701, Washington DC 20001.

12.     The International Brotherhood of Teamsters ("IBT") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). IBT is located at 25 Louisiana Avenue, N.W. Washington, D.C. 20001 and brings this action on behalf of its active and retired members of local unions that represent GE active and retired employees.

13.     The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW") is a "labor organization" within the meaning of 29 U.S.C. § 152(5) and an "employee organization" within the meaning of 29 U.S.C. § 1002(4). USW is located at 60 Blvd. of the Allies, Pittsburgh, PA 15222.

14.     The following individual Plaintiff Class Representatives are retired members of the identified labor organizations who reside at their noted addresses:

A.      IUE-CWA:  William Spires, residing at 5611 Walnut Way, Louisville, Kentucky 40229; Randal Payton, residing at 277 Locust Drive, Taylorsville, Kentucky 40071; Eric Swanson, residing at 100 Vantage Terr. U-40, Swampscott, MA  01907; Richard Hanson, residing at 20 Mansfield Street, Lynn, MA 01904; Floyd Marquette, residing at 4668 Oviatt Whindham Road, Newton Falls, Ohio  44444; Thomas Smith, residing at 5975 McClintocksburg Road, Ravenna, Ohio  44266; Susan Corfios, residing at 1864 Bears Den Road, Youngstown, Ohio  44511, Sharryn Jones, residing at 6810 Grove Street, Brookfield, Ohio  44403; Eleanor Antonell, residing at 297 Cranberry Court, Warren, Ohio 44483; Ronald Klazon, Sr., residing at 3 Kreidler Drive, Poland, Ohio 44514.

B.      UE:  Ronald Flowers, residing at 6903 Garfield Avenue, Harborcreek, Pennsylvania 16421; James DeWolf, residing at 328 Boyer Road, Erie, Pennsylvania 16511; Sandra Sue Lee, 9815 German Road, North East, Pennsylvania 16428.

- 4 -

C.      IAM:  Robert Buffenbarger, residing at 4669 Harrelton Road, Lebanon, Ohio

45036; and Carroll Smith, residing at 818 Gallaher Road, Monroe, Ohio  45050

D.      UAW:  Theodore Shimkowiak, residing at 11946 Martin Alexander Road,

Sardinia, Ohio 45171.

E.      IBEW:  Rich Friedeck, residing at 302 Blair Court, Waukesha, Wisconsin 53184.

F.      IBT:  Thomas Stevens, Jr. residing at 509 Church Street, Long Branch, New

Jersey  07740.

G.      IFPTE:  Zora Margosian, residing at 20 Cowdrey Avenue, Lynn, MA  01904;

Floyd Miklic, residing at 20 Linden Road, Albany, New York 12208; Garry Ward, residing at 3

Post View Drive, Palm Coast, Florida  32164; Peter Bargovic, residing at 9851 SW 63rd Loop,

Ocala, Florida 34481; William Cervera, residing at 20 Jacob Street, Ballston Lake, New York

12019; Jeffrey Marshall, residing at 2700 Edgewood Avenue, Schenectady, New York 12306;

Lloyd Terrell, residing at 1334 Bozenkill Road, Delanson, New York 12053; David Esperti,

residing at 25 Northern Terrace, Gloversville, New York 12078; Donald Rosbozom, residing at

20 Tieman Road, Glenville, New York  12302; and Raymond J. Reksc, residing at 438 McQueen

Road, Amsterdam, New York  12010.

15.     Each of the individual Class Representative Plaintiffs are retired members of the

Plaintiff Unions and current or anticipated participants in the GE Pensioners Prescription Drug

Plan ("Prescription Drug Plan"), the GE Medical Care Plan for Pensioners ("Medical Care

Plan"), the GE Pensioners Hospital Indemnity Plan ("Hospital Indemnity Plan") and the GE

Medicare Insurance Plan for Part B Benefits ("Medicare Part B Plan") (collectively "Retiree

Benefit Plans") who have been advised that effective January 1, 2016, the medical benefits to

which they were entitled in retirement pursuant to the applicable collective bargaining agreements are being unilaterally terminated by GE.

16.     GE is a New York Corporation headquartered at 3135 Easton Turnpike, Fairfield, CT 06431 and is present in the District in a variety of ways including its ownership of property at 1313 West Market Street, Warren, Ohio and 1975 Noble Road, Nela Park Cleveland, Ohio 44112-6300.

17.     GE is the administrator and sponsor of the Retiree Benefit Plans.

## STATEMENT OF RELEVANT FACTS

18.     The IUE-CWA has represented a nationwide unit of production and maintenance and service employees of GE since it was founded in 1949.

19.     Since 1949, IUE-CWA (originally known as the International Union of Electrical, Radio and Machine Employees, AFL-CIO or "IUE") has been party to a succession of collective bargaining agreements with GE covering tens of thousands of employees employed in that national collective bargaining unit. IUE-CWA negotiates with GE through its affiliated IUE-CWA GE Conference Board.

20.     The UE has represented a nationwide unit of production, maintenance and service employees of GE since the UE was founded in 1936.

21.     Since 1938, UE has been party to numerous successive national collective bargaining agreements with GE covering thousands of employees of GE in that national collective bargaining unit.

22.     In addition to the IUE-CWA and UE, other labor organizations including the IBEW, IAM, UAW, IFPTE, IBT and USW (collectively, "Plaintiff Unions") have also represented production employees employed by GE at various facilities for more than 60 years.

- 6 -

Since the early 1970's the Plaintiff Unions have engaged in collective bargaining with GE through an organization known as the Coordinated Bargaining Committee of GE Unions ("CBC"). In addition to the Plaintiff Unions, the CBC also negotiates on behalf of GE employees represented by the Service Employees International Union and the Sheet Metal Workers International Association.

23.     Since the early 1970's the collective bargaining agreements between the CBC and GE have required GE to provide medical insurance benefits to retirees who were represented by the CBC during their working lives at GE.  The Part A Medicare Reimbursement Plan (now known as the Medical Care Plan) was one of the first post-65 welfare benefit plans negotiated by the CBC.

24.     National negotiations between GE and the CBC in 1973, 1976, 1979, 1982, 1985, 1988, 1991, 1994, 1997, 2000, 2003, 2007, 2011 and 2015 resulted in collective bargaining agreements requiring that GE provide post-retirement medical care to GE retirees, including post-65 GE retirees.  Each of those negotiations resulted in the execution of a Memorandum of Settlement ("MOS") between GE and the CBC that established the terms of the new collective bargaining agreement.

25.     Medical benefits for active and retired CBC members have always been a key element of the compensation programs negotiated by the CBC for their members in each of those negotiations.

26.     The CBC representatives and the GE representatives at each round of collective bargaining from the early 1970's through 2011 treated the subject of health benefits for then existing retirees as a permissive subject of bargaining under the National Labor Relations Act on which the parties bargained an agreement.  The medical benefits paid for by GE through the

Retiree Benefit Plans were fixed by the collective bargaining agreement at the time of the retiree's retirement, although there were minor changes to some existing retiree benefits that were accepted by the CBC in collective bargaining with GE.

      27.    The terms of each MOS demonstrate that the CBC and GE mutually understood that the Retiree Benefit Plans provided lifetime benefits that would continue throughout a GE worker's retirement just as his or her pension did:

      A.    The MOS's repeatedly referred to Lifetime Maximum benefits available to pensioners under the Retiree Benefit Plans:

      1.    The 1979 MOS provided at Appendix B:

- Increase the Lifetime Maximum under the Medical Care Plan to $21,000 for active employees who retire (and spouses) and qualify for coverage under the plan (effective 7/1/79).

      2.    The 1997 MOS provides at Appendix B "Insurance" that:

- The Lifetime Maximum Benefit was increased to $1.5 million per person effective June 30, 1997.  This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

- The Lifetime Maximum Benefit under the Medical Care Plan was increased to $75,000 per family. The new lifetime maximum applies to all eligible retiree and spouse participants for expenses incurred on or after the effective date.

- The Lifetime Maximum Benefit was increased under the Hospital Indemnity Plan.

      3.    The 2000 MOS provides at Appendix B "Insurance":

- The Lifetime Maximum Benefit was increased to $2 million per person effective June 26, 2000.  This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

- The Medical Care Plan was amended to increase the benefits payable under the plan to a lifetime maximum of $100,000 combined per retiree and spouse (effective June 26, 2000).

- The Hospital Indemnity Plan was amended to increase the benefits payable under the Plan lifetime maximum to $50,000 per participant. This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

4.      The 2003 MOS provides at Appendix B "Insurance:"

- The Lifetime Maximum Benefit was increased to $2.5 million per person effective June 16, 2003. This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

- The Medical Care Plan increased its Lifetime Maximum Benefit to $125,000 to retiree and spouse on a combined basis effective January 1, 2004.  The increased lifetime maximum applies to all eligible retirees and their covered dependents for expenses incurred on or after the effective date.

- The Hospital Indemnity Plan was amended to increase the benefits payable under the Plan lifetime maximum to $75,000 per participant. This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

5.      The 2007 MOS provides at Appendix B "Insurance:"

- The Lifetime Maximum Benefit was increased to $3 million per person effective June 18, 2007.  This new lifetime maximum applies to all eligible employees, retirees and their covered dependents for expenses incurred on or after the effective date.

- The Hospital Indemnity Plan was amended to increase the benefits payable under the Plan lifetime maximum to $100,000 per participant.

B.      For many years the MOS and Insurance Agreements capped the amount of GE's post-contract financial responsibility for its Retiree Benefit Plans after the CBC contract expired at the cost incurred in the last year of the contract.  This demonstrates that GE always understood that its retiree medical obligations for CBC members did not expire when the CBC contract

expired.  But GE removed that cap on its post-contract expiration retiree medical costs in 2007 demonstrating that it had an uncapped responsibility for the cost of its retiree medical expenses after the CBC contract expired. For example, the 2003 MOS stated at Section V.A.2.:

> Company Contribution Towards Retiree Health Benefits
>
> Modify the plan and the Pension and Insurance Agreement to update the cap on the Company's contribution towards the cost of coverage provided to retirees enrolled for employee or dependent coverage (effective June 16, 2003).
>
> The new cap establishes the maximum Company contribution at a cost not to exceed the applicable 2007 per capita cost for each plan. Effective January 1, 2008, retirees will pay additional contributions for employee or dependent coverage to cover the cost of coverage in excess of the Company's 2007 per capita cost levels.
>
> No retiree will be adversely affected by this provision during the term of the collective bargaining agreement.

The 2007 MOS and Insurance Agreement removed any limit on GE's contribution towards the cost of coverage provided to retirees enrolled for employee or dependent coverage effective June 18, 2007.

      C.      Other terms within the Retiree Benefit Plans that were incorporated into the CBC contracts contain also constitute express written promises which GE and CBC representatives reasonably interpreted as creating a promise by GE of lifetime retiree medical  benefits:

> 1.      Part VIII Prescription Drug Plan (Exhibit A)
>
> Enrollment
>
> you may suspend coverage to enroll in a Medigap Plan not sponsored by the Company at any time. You may also reenroll for coverage under this part at any time regardless of your health status.
>
> 2.      Part VII Medical Care Plan (Exhibit B)
>
> Maximum Benefits

The aggregate maximum benefits payable under this Part for you and your spouse or eligible domestic partner, including benefits paid for expenses incurred prior to June 26, 2000 is $100,000 ( effective January 1, 2004, $125,000). <u>In the event of your death, your surviving spouse or eligible domestic partner will have medical care benefits available equal to the remaining balance, if any, of the amount of such benefits available to you and your spouse prior to your death.</u>

3.      Hospital Indemnity Plan (Exhibit C)

        Medicare HMOs

                <u>If you enroll for coverage in a Medicare-certified health maintenance organization made available by the Company in lieu of this Plan</u> when you first become eligible for coverage hereunder, <u>you may enroll in this Plan regardless of your health status</u>, provided you make application within 60 days after your Medicare health maintenance organization coverage is discontinued.

H.      Eligible retirees and their spouses who are enrolled in Medicare Part B may make an annual election to opt out of all health coverage made available by the Company …

        2.      <u>Eligible retirees and spouses who opt out at age 65 … may enroll in this Plan at any time …</u>
        3.      <u>Eligible retirees and spouses who were previously enrolled but opt out after age 65 will be suspended.  Thereafter coverage may be reinstated at any time. …</u>

D.      The Retiree Benefit Plans incorporate the GE pension plan provisions to an unprecedented degree which reflects the mutual understanding that GE retirees were entitled to both their GE pension and their GE retiree health benefits throughout their lifetimes:

        1.      The 1973 MOS expressly characterized retiree medical coverage as a pension benefit at Appendix B "Pensions."

        2.      The MOSs from 1994, 1997, 2000, 2003, 2007 and 2011 calculated the premiums to be paid by retired participants who retired before January 1, 2004 by incorporation of the GE Pension Plan, stating: "Annual pay for retirees is defined as retirement income under the GE Pension Plan."

- 11 -

      a.      The 1994 MOS provides at Appendix B "Insurance:"

Annual pay for purpose of the schedule of required employee contributions "for retirees is defined as retirement income under the GE Pension Plan and any other Company retirement plan."

      b.      The 1997 MOS provides at Appendix B "Insurance:"

Annual pay for purpose of the schedule of required employee contributions "for retirees is defined as retirement income under the GE Pension Plan and any other Company retirement plan" except as provided in Section IV A. 12 "Annual Pay for Retirees."

Section IV A. 12 "Annual Pay for Retirees provided "Change the basis for determining retiree contributions, deductibles and out of pocket maximums as follows:  Annual pay for employees whose Normal Straight Time Annual Earnings is $60,000 or more and who retire after January 1, 1998 or later is defined as their Normal Straight Time Annual Earnings in effect prior to their retirement"

E.      The terms of the 2011 MOS between the CBC and GE show that the terms of the Prescription Drug Plans for existing retirees were left intact for pre-2004 retirees and changed only for post-2004 retirees with the permission of the CBC.

F.      Title I Section 7 of the 2011 Pension & Insurance agreement provides that GE agrees that during the term of this agreement:

Subject to Sections 2 and 3 of Title I *[GE Board of Director's approval]* and Section 1 of Title II *[illegality]* and notwithstanding any provisions to the contrary in the GE Life Disability and Medical Plan, neither that Plan nor … the GE Pensioner's Hospital Indemnity Plan, the GE Medicare Insurance Plan for Part B Benefits, <u>all to the extent applicable to employees</u>, shall be amended or terminated by the Company so long as this agreement remains in effect.

The reference to "employees" was intentional because Sections 3(d) and 3(g) of Title I of the 2011 Pension and Insurance Agreement obligate GE to make available "to pensioners" the terms of the Medicare Part B Plan and the Hospital Indemnity Plan.  This language shows it was so clear to the parties that GE could not terminate or modify retiree insurance plans for those

already retired that pensioners did not need to be included in the language precluding GE from terminating or modifying those benefits for employees.

28.    The 2011 Pension and Insurance collective bargaining agreement between GE and the CBC incorporates as Exhibits A through J, the employee benefit plans which are offered to active and retired union-represented employees, including the four Retiree Benefit Plans that GE has announced its intention to terminate as of January 1, 2016.

**THE PRESCRIPTION DRUG PLAN**

29.    The Prescription Drug Plan is Part VIII of the GE Medical Care Plan and is attached to the Complaint as Exhibit A.

30.    In 2014, the cost to GE of maintaining the Prescription Drug Plan was $132,406,000 for 124,701 participants. The costs to GE of maintaining the Prescription Drug Plan was $139,776,000 in 2013 for 126,032 participants; $135,450,000 in 2012 for 127,698 participants; and $140,251,000 in 2011 for 129,338 participants. The retirees represented by the Plaintiff Unions constitute a substantial component of the participants in the Prescription Drug Plan and directly benefited from a substantial portion of the dollars GE paid for retiree prescription drug benefits in each of the above years.

31.    The Prescription Drug Plan measures service for purposes of obtaining benefits using the same standards as the GE Hourly Pension Plan uses to measure pension vesting service. Part A "Eligibility" for the Prescription Drug Plan hinges eligibility for service on years of "continuous service" which is the same criteria for vesting benefits utilized under the GE Hourly Pension Plan.  Eligibility under Section A(d) of the Prescription Drug Plan explicitly refers to a retiree having 25 or more years of "Pension Qualification Service" which is a defined term for vesting service under the GE Hourly Pension Plan.

32.     The Prescription Drug Plan sets forth a definition of a "Retiree" who is eligible for benefits under the Plan at sections VII(G)(1) as meaning "any person who retired or shall retire from the employ of the General Electric Company."  The inclusion of both retirees who have retired and those who shall retire from GE as eligible for these important benefit programs demonstrates that the status of being retired – a condition that lasts for a lifetime – is the principal qualification for the receipt of benefits under these plans and under the collective bargaining agreements into which they are incorporated.

33.     Section C of the Prescription Drug Plan, entitled "Benefits," defines the available benefit based on the year in which a pensioner retired and demonstrates that once a CBC-represented GE retiree became eligible for a retiree health benefit, they remained entitled to that benefit throughout their retirement unless the Plaintiff Unions agreed to a minor change in a co-pay provision. The Retail Option co-pay for participants enrolled in the Plan (*i.e*., retired) prior to January 1, 2004 is no more than $15 for each 21 day supply of drugs. The mail order option co-pay for pre-January 1, 2004 participants requires a co-payment of no more than $20 (effective January 1, 2004, $25) for up to a 90 day supply. Pre-2004 retirees have 100% company paid drug coverage after $1,500 in out of pocket drug expenditures.

34.     As a result of agreements reached by GE and the CBC in 2003, the Retail Option for participants who retired on or after January 1, 2004 requires a payment of no more than $12 for each 21 day supply of generic drugs or $16 for each 21 day supply of brand name drugs. The Mail Order Option for participants on or after January 1, 2004 requires $20 for generic and $36 for brand name drugs. Post-2004 retirees have 100% company paid drug coverage after $2,000 in out-of-pocket drug expenditures.

35.     The Prescription Drug Plan states that "the Company and its Affiliates" "pay the entire cost of this Part except for Retiree contributions required under Sections A.1.c, A.1.d, and B.2" of the Plan.  Section A.1.c refers to a term of the Plan negotiated with the Plaintiff Unions under which retirees with less than 15 years continuous service pay 25% of the cost of the benefits of the Plan. Section A.1.d requires certain retirees to pay 50% of the cost of the benefits of the Plan if a retiree is eligible for benefits under the Prescription Drug Plan solely because they had 25 years of continuous service and their service with GE terminated on or after June 27, 1988, or a retiree had 25 years of Pension Qualification Service and his or her service with GE terminated on or after July 1, 1991 and, in either case, their service terminated because of (i) a plant closing or (ii) transfer to a successor employer or  (iii) after one year on layoff with protected service. Paragraph B.2 refers to a situation in which a state imposes surcharges and the retirees' share of any such surcharges is 50%.  Other than in those limited situations, GE bears and has always borne the full costs of the Prescription Drug Plan in accordance with its obligations under the CBC collective bargaining agreements.

36.     The $1,000 Retiree Reimbursement Account ("RRA") GE has announced it will provide as of January 1, 2016 in lieu of the Prescription Drug Plan (and the other terminated plans) will not replace the value of the Prescription Drug Plan. The cost to GE per participant in the Prescription Drug Plan in 2014 was $1,062 but an average spread over 133,851 lives masks enormous variations in prescription drug costs among participants. In apparent recognition of that reality, GE has proposed that in addition to the $1,000 RRA, it will provide a benefit for eligible individuals whose prescription drug costs under a replacement plan exceed the Medicare catastrophic coverage threshold ($4,850) in any year.  That means that CBC-represented retirees will first have to use the RRA $1,000 to pay the premiums on any replacement prescription drug

plan (and other replacement plans) they obtain through the proposed OneExchange and then pay up to $4,850 in co-pays for critically needed prescription medicine before GE pays any benefit.

37.    Thousands of CBC-represented GE retirees who are living on fixed incomes cannot afford to pay up to $4,850 in co-pays each year that would have been absorbed by GE as part of its costs under the Prescription Drug Plan.

38.    The Prescription Drug Plan does not have a reservation of any right by GE to amend or terminate the Plan set forth within the terms of Part VIII. Part IX.F of the GE Health Plan provides that "This Plan may be amended, suspended, or terminated by the Board of Directors in whole or in part, at any time without limitation, <u>except as may be otherwise provided in collective bargaining agreements</u> …" (Emphasis added.) The Prescription Drug Plan applies to thousands of GE hourly employees that are not covered by collective bargaining agreements and GE may be free to amend the Prescription Drug Plan with respect to those non-union represented active employees and retirees as GE deems appropriate. GE has, however, incorporated the Prescription Drug Plan into the CBC agreements and cannot change the terms of that Plan without the consent of the CBC.

**THE MEDICAL CARE PLAN**

39.    The Medical Care Plan is Part VII of the GE Medical Care Plan and is attached to the Complaint as Exhibit B. On information and belief, this Plan is also known as the Part A Medicare Supplement Plan.

40.    In 2014, the cost to GE of maintaining the Medical Care Plan was $40,015,000 for 133,851 participants. The cost to GE of maintaining the Medical Care Plan was $41,081,000 in 2013 for 135,234 participants; $40,816,000 in 2012 for 136,788 participants; and $37,909,000

in 2011 for 136,993 participants. The retirees represented by the Plaintiff Unions constitute a substantial component of the participants in the Medical Care Plan in each of the above years.

41.     The Medical Care Plan measures service for purposes of obtaining benefits using the same standards as the GE Hourly Pension Plan uses to measure vesting service. Part A, entitled "Eligibility," for the Medical Care Plan hinges eligibility for service on years of "continuous service" which is the same criteria for vesting benefits utilized under the GE Hourly Pension Plan. Eligibility under Section A.d explicitly refers to a retiree having 25 or more years of "Pension Qualification Service" which is a defined term for vesting service under the GE Hourly Pension Plan.

42.     The Medical Care Plan sets forth a definition of a "Retiree" who is eligible for benefits under the Plan, at Section VII.G.1, as meaning "any person who retired or shall retire from the employ of the General Electric Company." The inclusion of both retirees who have retired and those who shall retire from GE as eligible for these important benefit programs demonstrates that the status of being retired – a condition that lasts for a lifetime – is the principal qualification for the receipt of benefits under the Plan and under the collective bargaining agreements into which they are incorporated.

43.     The Medical Care Plan provides insurance which supplements the hospitalization benefits now provided by Medicare. For example, under Section C.1, entitled  "Hospital Confinements," the Medical Care Plan reimburses participants up to $675 for the first day of a hospital confinement; $137.50 for the 61st through the 90th day of a confinement; and $275 per day after the 91st day of a confinement. Benefits are also provided by the Medical Care Plan for extended care facility confinements and for surgery at ambulatory surgical facilities.

44.     The aggregate maximum benefit provided under the Medical Care Plan is $125,000, effective January 1, 2004.  The Medical Care Plan also provides that surviving spouses of GE retirees will be entitled to medical care benefits equal to the remaining balance of the amount of such benefits available to the retiree or his or her spouse prior to their death. The reference to benefits remaining in place not only throughout the life of the retiree, but also beyond the death of the retiree, confirms the understanding that the Medical Care Plan was intended to and did remain in effect throughout the life of a retiree.

45.     The Medical Care Plan does not have a reservation of any right by GE to amend or terminate the Medical Care Plan set forth within the terms of Part VII.  Part IX.F of the GE Health Plan provides that "This Plan may be amended, suspended, or terminated by the Board of Directors in whole or in part, at any time without limitation, <u>except as may be otherwise provided in collective bargaining agreements</u> …" (Emphasis added.)  The Medical Care Plan applies to thousands of GE hourly active and retired employees that are not covered by collective bargaining agreements and GE may be free to amend the Medical Care Plan with respect to those non-union represented active employees and retirees as GE deems appropriate.  GE has, however, incorporated the Medical Care Plan into the CBC agreements and cannot change the terms of that Plan without the consent of the CBC.

**THE HOSPITAL INDEMNITY PLAN**

46.     The Hospital Indemnity Plan had 80,897 participants in 2014.  Retired members of the Plaintiff Unions represented a substantial portion of those participants.  The Hospital Indemnity Plan is attached to the Complaint as Exhibit C.

47.     The costs of the Hospital Indemnity Plan are paid by the Participants in that plan by the payment of a small monthly fee to GE (*e.g.,* $9.50 per month per retiree in 2011 for the

Hospital Indemnity Plan). Section II of the Hospital Indemnity Plan states that these fees are deductible monthly from the participant's GE Pension payments. The requirement that these fees be paid from a retiree's monthly pension payments if they are receiving a GE Pension confirms that these benefits were to be co-extensive with the term of the retiree's retirement, for life.

48.     The reservation of rights language GE inserted into the Hospital Indemnity Plan clarifies that GE's rights to amend, suspend or terminate the Plan is only "except as may be otherwise provided in collective bargaining agreements."

49.     The Plaintiff Unions have not authorized GE to amend, suspend or terminate the Hospital Indemnity Plan which has been incorporated into the CBC collective bargaining agreements.

**MEDICARE PART B Plan**

50.     The terms of the Medicare Part B Plan are similar to the terms of the Hospital Indemnity Plan, including the limitations on the right of GE to amend, suspend or terminate the Plan imposed by collective bargaining agreements.  The Medicare Part B Plan is attached to the Complaint as Exhibit D.

**THE TERMS OF THE RETIREE BENEFIT PLANS SHOW THAT THEY PROVIDED VESTED LIFETIME BENEFITS**

51.     The terms of the Retiree Benefit Plans contain written language which GE and CBC representatives reasonably interpreted as creating a promise by GE to vest the retiree benefits. For example, the Retiree Benefit Plans provide that: (i) eligible retirees who opt out of coverage of the Plans could "enroll at any time" back into the Plans; (ii) in the event of a retiree's death, his or her surviving spouse or eligible domestic partner is entitled to medical care benefits equal to the remaining balance, if any, of the amount of such benefits available to the retiree prior to his or her death; (iii) there was an express lifetime limit on benefits for retirees of

$125,000 under the Hospital Indemnity Plan; (iv) plan qualification included periods of continuous service and Pension Qualification Service; and (v) plan premiums were deducted from the GE Pension Plan monthly payments:

### Part VII Medical Care Plan (Exhibit B)

    A.    1.    <u>You are eligible for benefits under this part if</u>
                a.    <u>you are a retiree who is age 65 or older</u> …
                b.    you are a retiree who is age 65 or older and had at least 15 years of continuous service
                d.    <u>you had 25 or more years of Pension Qualification Service</u>

            8.    <u>Eligible retirees</u> …may make an annual election to opt out of all health coverage made available by the Company …
                b,    <u>Eligible retirees . . . . who opt out at age 65</u>. . . . <u>may enroll in this Part at any time</u>,  In such cases, coverage will be effective [the following January 1.

    E.    Maximum Benefits

    The aggregate maximum benefits payable under this Part for you and your spouse or eligible domestic partner, including benefits paid for expenses incurred prior to June 26, 2000 is $100,000 ( effective January 1, 2004, $125,000). <u>In the event of your death, your surviving spouse or eligible domestic partner will have medical care benefits available equal to the remaining balance, if any, of the amount of such benefits available to you and your spouse prior to your death.</u>

    G.    The term <u>"retiree" means</u> …any person who retired <u>or shall retire</u> from the employ of the General Electric Company

### Part VIII Prescription Drug Plan (Exhibit A)

    A.    1.    <u>You are eligible for benefits under this part if</u>
                a.    <u>you are a retiree who is age 65 or older</u> …
                b.    you are a retiree who is age 65 or older and had at least 15 years of continuous service
                …
                d.    <u>you had 25 or more years of Pension Qualification Service</u>

            5.    Enrollment

            6.    you may suspend coverage to enroll in a Medigap Plan not sponsored by the Company at any time. <u>You may also reenroll for</u>

coverage under this part at any time regardless of your health status.

8.  Eligible retirees and their spouses . . . may make an annual election to opt out of all health coverage made available by the Company…

   b.  Eligible retirees and spouses … who opt out at age 65 … may reenroll in this Part at any time.

   c.  … Thereafter, coverage may be reinstated at any time.

F.  The term "retiree" means …any person who retired or shall retire from the employ of the General Electric Company

General Provisions

F.  Amendment or Termination

This Plan may be amended, suspended, or terminated by the Board of Directors in whole or in part, at any time without limitation, except as may be otherwise provided in collective bargaining agreements

## Hospital Indemnity Plan (Exhibit D)

Section 1

A.  Eligibility

   1.  you are a Retiree who is age 65 or older

D.  If you are a surviving spouse of a person enrolled in this Plan . . .  and you are not longer covered under the Prior Medical Plan, this Plan (1) will continue to cover you if your were age 65  or older when your spouse died, or (2) will cover you from the first day of the month in which you reach age 65 … provided you continue such Prior Medical Plan coverage for as long as you are eligible for such coverage, are enrolled in this Plan . . .  and continue to pay the required contributions.

F.  Medicare HMOs

   1.  If you enroll for coverage in a Medicare-certified health maintenance organization made available by the Company in lieu of this Plan when you first become eligible for coverage hereunder, you may enroll in this Plan regardless of your health status, provided you make application within 60 days after your Medicare health maintenance organization coverage is discontinued.

   2.  If your coverage under this Plan was discontinued because you enrolled for coverage in a Medicare-certified health maintenance

organization made available to you by the Company, you may enroll in this plan regardless of your health status, provided you made application within 60 days after your Medicare health maintenance organization coverage is discontinued.

H.    Eligible retirees and their spouses who are enrolled in Medicare Part B may make an annual election to opt out of all health coverage made available by the Company …

2.    Eligible retirees and spouses who opt out at age 65 … may enroll in this Plan at any time …

3.    Eligible retirees and spouses who were previously enrolled but opt out after age 65 will be suspended.  Thereafter coverage may be reinstated at any time. …

Notwithstanding anything to the contrary in the foregoing, the provisions of this section shall not be applicable to participants in this Part who are not enrolled in this option as of January 1, 2012 and any participants enrolled on or after January 1, 2012.

Section II

The required cost of the Plan for your participation and for your spouse, if you are enrolled for such coverage, will be deducted monthly from your monthly GE Pension payments …

D.    Maximum Benefits

Benefits payable under this Part, including benefits paid for expenses incurred prior to June 20, 2011 shall be limited to a lifetime maximum per covered individual (effective January 1, 2012, $125,000).

**UNION-REPRESENTED EMPLOYEES WERE URGED BY GE MANAGERS TO RETIRE PRIOR TO THE NEW CONTRACT IN 2011 TO PRESERVE THEIR RIGHT TO THE RETIRE BENEFITS IN EFFECT PRIOR TO JUNE 22, 2011**

52.    In the months preceding the negotiation of a new collective bargaining agreement between the CBC and GE in 2011, GE managers and human resource representatives advised GE employees represented by the CBC that they should retire before the new contract took effect on June 22, 2011, to make sure that they would be able to continue to participate in the Retiree

Benefit Plans applicable to retirees prior to the amendments that were widely expected to occur in the 2011 negotiations.

53.      In addition to the promises and guarantees of continued medical coverage given to GE CBC-represented retirees who retired at normal retirement age, the collective bargaining agreements between the CBC unions and GE have included provisions for special early retirements such as Special Early Retirement Options ("SERO") that allow for an early retirement with continued medical coverage.  During the collective bargaining contract in effect between the CBC and GE from 2011 through June 21, 2015, hundreds of CBC-represented employees took SERO retirements.  Each of those individuals was promised continuing health benefits during her or his retirement in the form and with the benefits that were available under that collective bargaining agreement.

## IN THE 2015 NEGOTIATIONS WITH GE, THE CBC DID NOT CONSENT TO BARGAIN ON BEHALF OF EXISTING RETIREES

54.      The most recent collective bargaining agreement between GE and the CBC was effective on July 22, 2015 and will expire in 2019.  In the 2015 negotiations, the CBC expressly stated that they were not bargaining on behalf of union members who had retired prior to June 21, 2015, the last date of the prior contract. The 2015 agreement between the parties acknowledges that the post-65 benefit changes agreed to by the CBC during the 2015 negotiations did not apply to the GE retiree health benefits available to retired union members who retired before the first day of the new 2015 contract.

55.      The CBC unions have not consented to any changes in the retiree benefit programs for retirees who retired on or before June 21, 2015, the last day of the 2011 contract. Those post-65 retirees remain eligible to participate in the post-65 Retiree Benefit Plans in place as of June 21, 2015

56.     The CBC did agree to changes in retiree medical benefits for retirees who retire after the terms of the new agreement took effect on June 22, 2015, but GE compensated those not yet retired employees for those changes in retiree medical benefits by substantial increases in hourly compensation and other benefit improvements that were not provided to existing retirees.

57.     The CBC-represented retirees who retired before June 21, 2015, the first day of the 2015 contract, received no consideration from GE to compensate them for any reduction in the value of the Retiree Benefit Plans which they were provided at the time of their retirement.

**GE HAS ANNOUNCED THAT IT WILL UNILATERALLY TERMINATE THE RETIREE BENEFIT PLANS AS OF JANUARY 1, 2016**

58.     On or about July 20, 2015, GE advised its retired production employees that former production employees and their spouses, who are currently Medicare-eligible and who participate in the Prescription Drug Plan, the Medical Care Plan and the Medicare Part B Plan, that GE is unilaterally terminating those Plans as of January 1, 2016. GE is also eliminating a plan for former production employees in which the benefit costs under the Plan are paid by the participants known as the Hospital Indemnity Plan.  In place of these four Retiree Benefit Plans, GE is unilaterally instituting a $1,000 per year Retiree Reimbursement Account ("RRA") and providing the opportunity for retirees to enroll in replacement plans at their own cost through a private health care exchange. The GE correspondence to the Plaintiff Union retirees is attached to the Complaint as Exhibit E.

59.     The $1,000 RRA is not, however, available to all CBC-represented retirees. To be eligible to receive the $1,000 RRA, GE retirees must become age 65 prior to January 1, 2018. GE Retirees who retired prior to June 21, 2015 at any age between 55 and 62 will not be able to obtain the $1,000 RRA and will be forced to absorb the entire cost of replacing the Retiree Benefit Plans from their own pocket.

60.     Thousands of GE CBC-represented employees who took an early retirement based on the assurance that the GE post-retirement medical plans would be in place during their retirement will be required to pay thousands of dollars from their own pocket to secure replacement coverage for the post-65 plans that GE is terminating as of January 1, 2016.

**GE'S DIFFERENT APPROACH TO BARGAINING OVER RETIREE PENSION BENEFITS ILLUSTRATES THAT GE WILLINGLY BARGAINED OVER RETIREE WELFARE BENEFITS**

61.     GE also provides a monthly pension benefit to its retirees under the GE Pension Plan, including its post-65 retirees. GE and the CBC negotiate in each new agreement the increased pension benefits that will be available for union-represented GE employees who retire under the terms of that agreement. The CBC has periodically proposed increases in the pension benefits paid to existing retirees as well. GE has refused to bargain with the CBC about the pension benefits to be paid to existing retirees.

62.     On the occasions when GE has agreed to meet with CBC representatives to discuss any requests for increased pension benefits for existing retirees, GE has refused to do so in the context of collective bargaining negotiations and has insisted that such meetings occur outside of collective bargaining.

63.     GE has a completely different practice with respect to the Retiree Benefit Plans. GE has engaged in bargaining with the CBC concerning the terms of the Retiree Benefit Plans and incorporated the agreements concerning Retiree Benefit Plans into the CBC collective bargaining agreements.

**THE 2011 MOS ESTABLISHES THAT GE COULD NOT IMPLEMENT CHANGES IN RETIREE BENEFIT PLANS UNLESS THE CBC AGREED**

64.     GE has consistently recognized that it cannot change the terms of the Retiree Benefit Plans without the consent of the CBC.

65.     The negotiations of the 2011 MOS between the CBC and GE on the terms of a new collective bargaining agreement demonstrate that any changes in the terms available to existing retirees had to be bargained between the parties and were different depending on which plan was in effect at the time of a retirees' retirement unless the CBC agreed to a change for a class of existing retirees. The 2011 MOS is attached to the Complaint as Exhibit F. The language below from the 2011 MOS shows that the terms of the retiree Drug Plans for existing retirees were left intact for pre-2004 retirees and changed only for post-2004 retirees and that the lifetime maximum benefits under the Medical Care Plan, the Medicare Part B Plan and the Hospital Indemnity Plan were increased for all retirees:

   **RETIREE MEDICAL**

   A.     GE Pensioners Prescription Drug Plan

       1.     Medicare Part B Reimbursement Option

           Eliminate the Medicare Part B Reimbursement Option for new entrants. This includes plan participants enrolled prior to January 1, 2012 who are not participating in the option as of such date and any participants enrolled after such date (effective January 1, 2012).

       2.     Prescription Drug Benefits Co-pays Prescription Drug Annual Co-pay Maximum (Enrollees on or after 1/1/2004)

           Modify the plan to increase brand name and specialty (High Cost Tier) prescription drug co-pays for all participants who were enrolled on or after January 1, 2004 as follows (effective January 1, 2012).

           Brand name prescription drug co-pays:

- 26 -

Retail:  $30 per 21-day supply
Mail Order:  $65 for up to a 90-day supply
Specialty (High Cost Tier) prescription drug co-pays:
Retail:  $30 per 21-day supply
Mail Order:  $65 for up to a 90-day supply

Also, increase the annual co-pay maximum for prescriptions dispensed at retail and mail order service to $2,500 per individual. Upon reaching the co-pay maximum, the plan will pay 100% of covered retail and mail order service prescription drug expenses for the balance of the year (effective January 1, 2012).  …..

3. <u>Prescription Drug Benefits Co-pays Prescription Drug Annual Co-pay Maximum</u> (Enrollees prior to 1/1/2004)

Modify the plan to increase mail order prescription  drug co-pays for all participants enrolled prior to January 1, 2004 as follows (effective January 1, 2012):

Mail Order        $35 for up to a 90-day supply

Also, increase the annual co-pay maximum for prescriptions dispensed at retail and mail order service to $1,750 per individual. Upon reaching the co-pay maximum, the plan will pay 100% of covered retail and mail order service prescription drug expenses for the balance of the year (effective January 1, 2012). …

B.    GE Medical Care Plan for Pensioners

1. <u>First Day Hospital Inpatient Benefit</u>
Increase the first day hospital benefit under MCPP from $700 to $900 (effective January 1, 2012).

2. <u>Lifetime Maximum</u>
Increase the lifetime maximum from $150,000to $175,000 (effective January 1, 2012).

3. <u>Medicare Part B Reimbursement Option</u>
<u>Eliminate the Medicare Part B Reimbursement Option for new entrants.</u> This includes plan participants enrolled prior to January 1, 2012 who are not participating in the option as of such date and any participants enrolled after such date (effective January 1, 2012).

- 27 -

### GE PENSIONERS HOSPITAL INDEMNITY PLAN

      1.    <u>First Day Hospital Inpatient Benefit</u>

           Increase the first day hospital benefit under PHIP from $175 to $225 (effective January 1, 2012).

      2.    <u>Lifetime Maximum</u>

           Increase the lifetime maximum from $100,000 to $125,000 (effective January 1, 2012).

    D.    GE Medicare Insurance Plan for Part B Benefits

      1.    <u>Lifetime Maximum</u>

           Increase the lifetime maximum from $150,000 to $175,000 (effective January 1, 2012).

66.    Prior to 2011, GE had included in the Pension and Insurance Agreements an express cap on the amount of money it could be required to spend in order to provide the lifetime retiree medical coverage which it had promised its employees and retirees. The 2011 Pension and Insurance collective bargaining agreement removed the cap on GE's cost for providing retiree health insurance.

67.    The Company obligated itself in the 2011 Pension and Insurance Agreement contained in the 2011 MOS to provide medical benefits to pensioners as set forth in the Retiree Benefit Plans. The Pension and Insurance Agreement allows GE to demand re-negotiation of insurance plans to the extent they concern employees of GE but does not reserve an effective right to amend or terminate those Plans to the extent they applied to existing pensioners. Sections 3(d) and 3(g) of Title I obligate GE to make available "to pensioners" the terms of the Medicare Part B Plan and the Hospital Indemnity Plan. The parties thus understood and utilized the term pensioners and employees advisedly in the same section of the Pension and Insurance Agreement. Title I, Section 7(b) of the 2011 Pension and Insurance Agreement refers to the ability of the Company to amend or terminate the terms of the insurance agreements set forth in

- 28 -

the 2011 Pension and Insurance Agreement after the 2011 agreement expires but that ability is restricted "all to the extent applicable to employees."  There is no reference to pensioners in Title I, Section 7(b) because the parties to the agreement understood that GE had no right to terminate retiree benefits and there was therefore no need to set forth any limitations on GE's non-existent right to terminate retiree benefits. The statement at Title IV, Section 3 that, "This Agreement shall, subject to its terms, continue in full force and effect as to the Company and the Union and Locals recognized, as provided in Article 1 of the GE IUE-CWA National Agreement, through the 21st day of June 2015, and from year to year thereafter, unless not more than 90 and not less than 60 days prior to such date or any anniversary thereof, either the Company or the Union shall notify the other in writing of its intention to terminate this Agreement upon such date or anniversary date" merely allows the parties to seek to renegotiate the terms of the established plans, specifically with regard to the employees that are mentioned repeatedly in the Duration clause. It is not a grant of unilateral authority to GE to terminate plans in which existing pensioners participate.

**IN 2011, GE AGREED WITH THE CBC TO A REOPENER OF THE TERMS OF THE GE PENSIONERS DRUG PLAN IF A MEDICARE PART D DRUG BENEFIT WAS ENACTED INTO LAW**

68.     On June 19, 2011, at the conclusion of the 2011 CBC negotiations, GE agreed upon a side letter agreement with the UE and the other CBC Unions that stated that the parties have agreed:

> to reopen the terms of the GE Pensioners Prescription Drug Plan in the event that a Medicare prescription drug benefit is enacted into law. If such legislation is passed, either party may request to renegotiate the affected provisions of the Plan. … The parties shall mutually agree on acceptable replacement provisions and the Plan shall be accordingly amended.

This letter is attached to the Complaint as Exhibit G. This letter acknowledges that even in a

situation where a change in law has rendered redundant key terms of a retiree health plan that

was incorporated into the collective bargaining agreement, GE did not have a unilateral right to

amend, suspend or terminate that Plan and could only seek negotiations with the CBC on

mutually acceptable replacement provisions.

**THE SUMMARY PLAN DESCRIPTION PUBLISHED BY GE ACKNOWLEDGES
THAT THE RETIREE BENEFIT PLANS ARE INCORPORATED INTO THE UNION
CONTRACTS AND THE UNION CONTRACTS CONTROL IN THE EVENT OF ANY
CONFLICT WITH THE PLANS**

69.     The relevant GE Summary Plan Description acknowledges that the Retiree

Benefit Plans have been incorporated into the collective bargaining agreements with the Plaintiff

Unions and that in the event of any conflict between the terms of a Plan and a collective

bargaining agreement, the terms of the collective bargaining agreement prevail. The SPD,

entitled, "Your Benefits Handbook: GE Pensioner Healthcare Options at Age 65," effective

January 1, 2012, states:

> For participants whose benefits arose under a collective bargaining agreement,
> participation in plans incorporated by reference into such agreement is only to the
> extent provided through the incorporation.  <u>For certain benefits whose specific terms
> and conditions are derived from a collective bargaining agreement, the terms and
> conditions of such collective bargaining agreement will govern should a conflict arise
> between this handbook or any programs or plans and the terms and conditions of such
> agreement. (Emphasis added.)</u>

The relevant portion of the 2012 SPD is attached to the Complaint as Exhibit H.

70.     Since the benefits in the Retiree Benefit Plans are incorporated into the collective

bargaining agreements, the terms of the Retiree Benefit Plans are thus also terms of the collective

bargaining agreements.

71.     GE never sought, much less obtained, permission of the CBC to alter the Retiree

Benefit Plans available to retired production employees represented by the CBC. GE has no

authority to amend or terminate any of the Retiree Benefit Plans that were incorporated into the CBC collective bargaining agreements.

72.     The announced benefit changes that GE intends to effectuate on January 1, 2016 would violate the existing collective bargaining agreements between GE and the CBC and the prior collective bargaining agreements under which production employees were employed prior to their retirement.

73.     The announced retiree medical benefit changes that GE intends to effectuate on January 1, 2016 would violate ERISA since they will deny the participants in the Retiree Benefit Plans the benefits to which they are entitled pursuant to the terms of those Plans.

**GE UNILATERALLY CHANGED THE STRUCTURE AND COMPOSITION OF THE RETIREE BENEFIT PLANS ON SEPTEMBER 5, 2014**

74.     On September 5, 2014, the Board of Directors of GE adopted a resolution effective January 1, 2015 stating that "all retiree healthcare plans maintained under the GE Life, Disability and Medical Plan, GE Health Choice Plan and GE Health Benefits for Production Employees Plan are hereby transferred to separate ERISA benefit plans for retirees which are hereby established (each, a "Retiree Health Plan")."  A copy of the Resolution is attached to the Complaint as Exhibit I.

75.     The Plaintiff Unions were not informed of the new Retiree Benefit Plans until after the conclusion of the 2015 negotiations with GE and never consented to the change in the retiree health plans enacted pursuant to the September, 2004 Resolution of the Board of Directors.

76.     The 2015 collective bargaining agreements between GE and the Plaintiff Unions contains an express reservation of the right of the Unions to challenge the actions by GE in splitting off their retirees into separate benefit plans.

## CLASS ACTION ALLEGATIONS

77.     The Individual Plaintiffs bring the Second and Third Causes of Action *infra*,

pursuant to Rule 23(a) and (b)(2), Fed. R. Civ. Pr., on behalf of a class of employees who shall

be defined as "all CBC union-represented retirees of General Electric Corporation who

participate in the GE Pensioners Prescription Drug Plan, the GE Medical Care Plan for

Pensioners, the GE Pensioners Hospital Indemnity Plan and the GE Medicare Insurance Plan for

Part B Benefits."

78.     The class, as defined, is appropriate under Rule 23(a) and (b)(2) because:

(a)     The class is so numerous that joinder of all members is impracticable

because the class of participants is believed to be in excess of 50,000 persons since there

were 124,701 participants in the Prescription Drug Plan in 2014 and the union-

represented retirees are a substantial component of that group. Members of the class are

retired GE employees who were represented by a CBC Union while they worked and are

located throughout the U.S.

(b)     There are questions of law or fact common to the class because all class

members were (i) covered by collective bargaining agreements negotiated by the CBC

with GE; (ii) participated or had the opportunity to participate in the same ERISA Retiree

Benefit Plans negotiated by the CBC; and (iii) have each been advised by GE that their

existing post-65 Retiree Benefit Plans will terminate on or about January 1, 2016.

(c)     The claims of the representative class members are typical of the claims of

the class. All members of the class are subject to the termination of their benefits by GE

on or about January 1, 2016. The class representatives do not have claims different from

those of other class members.

(d)     The representative class members will fairly and adequately protect the interests of the class. The class representatives' claims are the same as the claims of other class members and there is no conflict between them. Counsel for the class are well-versed in the law regarding retiree health benefits having represented unions and employee benefit funds for over 40 years and will vigorously represent the interests of the class.

(e)     GE acted on grounds generally applicable to the class when it: (i) agreed to establish the Retiree Benefit Plans; (ii) agreed to incorporate the Retiree Benefit Plans into the collective bargaining agreements; (iii) agreed that its ability to change the Retiree Benefit Plans was subject to the collective bargaining agreements; and (iv) announced the termination of the Retiree Benefit Plans, thereby making final relief appropriate to the class as a whole.

79.     In addition to the above class, a sub-class is also asserted that consists of the members of the main class who will not be age 65 by January 1, 2018, and who will not receive the $1,000 RRA that GE is making available to retirees who are age 65 as of January 1, 2016 or become age 65 as of January 1, 2018. The $1,000 RRA that GE has announced will be available for post-65 retirees to defray the cost of their Medicare supplement programs will only apply where the participant has reached age 65 before January 1, 2018.  Plaintiff Richard Hanson is a retired GE employee who will not be age 65 on or before January 1, 2018 and will not receive a $1,000 RRA to help him pay for the cost of their post-65 Medicare supplemental coverage that would have been provided by the Retire Benefit Plans that GE is terminating as of January 1, 2016. Hanson is the representative of thousands of other GE retirees who took early retirement based on the promise that the GE post-65 Retiree Benefit Plans would be in place and available

- 33 -

to them when they turned age 65. This sub-class, as defined, is appropriate under Rule 23(a) and (b)(2) because:

(a)     The subclass is so numerous that joinder of all members is impracticable because the subclass of participants is believed to be in excess of 15,000 persons since there are thousands of GE retirees who retired prior to age 65 and who will not be age 65 prior to January 1, 2018. Members of the class are retired from working in a GE facility and are located throughout the U.S.

(b)     There are questions of law or fact common to the class because all class members were: (i) covered by collective bargaining agreements negotiated by CBC unions with GE; (ii) participated or had the opportunity to participate in the same ERISA Retiree Benefit Plans negotiated by the CBC; (iii) have each been advised by GE that the existing post-65 Retiree Benefit Plans in which they intended to participate will terminate on or about January 1, 2016; and (iv) each of these subclass members will not be age 65 by January 1, 2016.

(c)     The claims of the representative class members are typical of the claims of the class. All members of the class are subject to the termination of their benefits by GE on or about January 1, 2016. The class representatives do not have claims different from those of other class members.

(d)     The representative class members will fairly and adequately protect the interests of the class. The class representatives' claims are the same as the claims of other class members and there is no conflict between them. Counsel for the class are well-versed in the law regarding retiree health benefits having represented unions and

employee benefit funds for over 40 years. Counsel will vigorously represent the interests of the class.

(e)    GE acted on grounds generally applicable to the class when: (i) it agreed to establish the Retiree Benefit Plans; (ii) it agreed to incorporate the Retiree Benefit Plans into the collective bargaining agreements; (iii) it agreed that its ability to change the Retiree Benefit Plans was subject to the collective bargaining agreements; and (iv) it announced the termination of the Retiree Benefit Plans, thereby making final injunctive relief appropriate to the subclass as a whole.

## COUNT I

### ON BEHALF OF THE PLAINTIFF UNIONS FOR RELIEF
### FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

80.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

81.    Plaintiff Unions assert claims for legal relief against GE for the damages they have suffered as a result of GE's violations of the applicable collective bargaining agreements that must be determined by a jury pursuant to the Seventh Amendment to the Constitution of the United States.

82.    The collective bargaining agreements negotiated by the CBC and GE are "contracts between an employer and a labor organization representing employees in an industry affecting commerce" within the meaning of 29 U.S.C. 185(a).

83.    GE's plan to terminate the Retiree Benefit Plans violates the collective bargaining agreements between the CBC and GE.

84.    Plaintiff Unions seek an Order from the Court pursuant to LMRA, Section 301, 29 U.S.C. § 185, enjoining GE from amending, terminating or, if such termination occurs, failing

to reinstate the Retiree Benefit Plans on the ground that the terms of the Retiree Benefit Plans were incorporated into the CBC collective bargaining agreements with GE.

85.     The terms of the Retiree Benefit Plans for retirees who were represented by Plaintiff Unions were established at the time each existing retiree retired.

86.     The threatened termination of benefits provided by the Retiree Benefit Plans is a breach of the applicable collective bargaining agreements and will be a further breach if the threatened plan terminations occur and are not remedied.

87.     Plaintiff Unions also seek an Order from the Court pursuant to LMRA, Section 301, 29 U.S.C. § 185, enjoining GE from continuing to implement the September 5, 2014, the Board of Directors of GE adopted a resolution pursuant to which all retiree healthcare plans maintained under the GE Life, Disability and Medical Plan, GE Health Choice Plan and GE Health Benefits for Production Employees Plan were transferred to separate ERISA benefit plans for retirees which are hereby established.

88.     The termination of the Retiree Benefit Plans is not subject to arbitration under the applicable collective bargaining agreements and the injunction sought by Plaintiff Unions is not barred by the Norris LaGuardia Act.

## COUNT II

### ON BEHALF OF THE PARTICIPANT CLASS FOR LEGAL RELIEF FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

89.     The Plaintiffs repeat and reallege the allegations of preceding paragraphs as though fully set forth herein.

90.     The Individual Plaintiffs and the members of the Participant Class and Subclass will suffer monetary losses as a result of GE's plan to terminate the Retiree Benefit Plans in violation of the collective bargaining agreements between the CBC and GE.

## COUNT III

## ON BEHALF OF THE PARTICIPANT CLASS FOR BREACH OF ERISA

91.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

92.     The Retiree Benefit Plans are ERISA welfare benefit plans under 29 U.S.C. § 1001(1) and (3).

93.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan."

94.     GE's plan to terminate the Retiree Benefit Plans constitutes a breach of fiduciary duty in violation of ERISA Section 404, 29 U.S.C. § 1104.

95.     The Individual Plaintiffs, for themselves and the class of participants they represent, request that this Court enjoin GE's threatened unlawful termination, as of January 1, 2016, of the benefits provided by the Retiree Benefit Plans.

96.     The Individual Plaintiffs, for themselves and the class of participants they represent, request that this Court enjoin GE from continuing to implement the September 5, 2014, the Board of Directors of GE adopted a resolution pursuant to which all retiree healthcare plans maintained under the GE Life, Disability and Medical Plan, GE Health Choice Plan and GE Health Benefits for Production Employees Plan were transferred to separate ERISA benefit plans for retirees which are hereby established.

## COUNT IV

## ON BEHALF OF ALL PLAINTIFFS FOR DECLARATORY JUDGMENT

97.     The Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

98.     Plaintiff Unions and the Individual Plaintiffs seek a declaration from this Court that GE cannot effectuate its announced intention to terminate or amend the Retiree Benefit Plans as of January 1, 2016.

99.     Plaintiff Unions will also seek a Declaration from the Court that GE had no authority to adopt or implement the September 5, 2014, the Board of Directors of GE adopted a resolution pursuant to which all retiree healthcare plans maintained under the GE Life, Disability and Medical Plan, GE Health Choice Plan and GE Health Benefits for Production Employees Plan were transferred to separate ERISA benefit plans for retirees which are hereby established.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

1.     AWARDING to the Plaintiff Participant Classes legal money damages arising from the breach and the threatened breach of the collective bargaining agreements based on GE's announced termination of the GE Pensioners Prescription Drug Plan, the GE Medical Care Plan for  Pensioners, the Pensioners Hospital Indemnity Plan or the GE Medicare Insurance Plan for Part B Benefits;

2.     DECLARING that the proposed changes to the GE Pensioners Prescription Drug Plan, the GE Medical Care Plan for Pensioners, the Pensioners Hospital Indemnity Plan or the GE Medicare Insurance Plan for Part B Benefits are in breach of the applicable collective bargaining agreements and a violation of ERISA;

3.      DECLARING that the changes that GE implement in which all retiree healthcare plans maintained under the GE Life, Disability and Medical Plan, GE Health Choice Plan and GE Health Benefits for Production Employees Plan were transferred to separate ERISA benefit plans for retirees was unlawful, in violation of the terms of the collective bargaining agreements and beyond the powers of the Board of Directors of GE.

4.      ENJOINING the proposed changes to the GE Pensioners Prescription Drug Plan, the GE Medical Care Plan for Pensioners, the Pensioners Hospital Indemnity Plan or the GE Medicare Insurance Plan for Part B Benefits that Defendant GE enacted pursuant to the Board of Directors Resolution dated September 4, 2014 and the further changes in those Plans that GE has announced will be made effective January 1, 2016;

4.      AWARDING to the Plaintiff Participant Classes equitable monetary relief if GE implements the proposed changes to the GE Pensioners Prescription Drug Plan, the GE Medical Care Plan for Pensioners, the Pensioners Hospital Indemnity Plan or the GE Medicare Insurance Plan for Part B Benefits;

5.      AWARDING the Plaintiffs their attorneys' fees and costs for this action; and

6.      PROVIDING such other, further or different relief, of legal or equitable character, as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Please take notice that Plaintiffs demand a trial by jury of each of their legal claims in this action.

Dated:  November 9, 2015
   Cleveland, Ohio

       SCHWARZWALD McNAIR & FUSCO LLP

       <u>*s/ David M. Fusco*</u>
       David M. Fusco (0010387)
       Jesse M. Gannon (0090461)
       616 Penton Media Building
       1300 East Ninth Street
       Cleveland, OH 44114-1503
       Telephone: (216) 566-1600
       Facsimile: (216) 566-1814
       dfusco@smcnlaw.com
       jgannon@smcnlaw.com

       KENNEDY, JENNIK & MURRAY, P.C.
       Thomas M. Kennedy
       Susan M. Jennik
       113 University Place, 7th Floor
       New York, N.Y. 10003
       Telephone: (212) 358-1500
       Facsimile: (212) 358-0207
       tkennedy@kjmlabor.com
       sjennik@kjmlabor.com

       *Attorneys for Plaintiffs*